**COOK INDUSTRIES, INC., Plaintiff,**

v.

**SECRETARY OF AGRICULTURE and United States Department of Agriculture, Defendants.**

Civ. A. No. 76–0316.

United States District Court, District of Columbia.

Feb. 25, 1977.

Frederick M. Lowther, Roslyn A. Mazer, Washington, D. C., for plaintiff.

Michael J. Ryan, Asst. U. S. Atty., Washington, D. C., for defendants.

MEMORANDUM AND ORDER

AUBREY E. ROBINSON, Jr., District Judge.

Plaintiff filed this action against defendants, the Secretary of Agriculture and the United States Department of Agriculture, seeking to have the Court declare certain remarks placed on Original Grain Inspection Certificates by the Destrehan Board of Trade ("DBOT"), the designated official inspection agency, to be "invalid, improper

and in contravention of law" and for an injunction to compel the defendants (hereinafter "USDA") to issue or cause to be issued "valid and unqualified" official grain inspection certificates under the United States Grain Standards Act, 7 U.S.C. § 71 et seq. (1976), certifying that the grain officially inspected after final elevation while being loaded aboard a ship was grade U.S. No. 3 Yellow Corn. DBOT is not a party to this action.

The case is currently before the Court on the parties cross motions for Summary Judgment. For the reasons set forth below the Court has determined that the Plaintiff's Motion must be denied, the Defendants' Motion granted and the case dismissed.

The facts of this case may be briefly stated. Cook Industries pursuant to a contract with Polish buyers commenced loading a cargo of corn on the ship M/V RYSY II, a super-tanker designed to carry oil but deployed by the buyers to carry grain. Loading began in December of 1975 in New Orleans, Louisiana. As required, the DBOT, a private agency licensed by the Secretary to conduct official grain inspections in the New Orleans area, began its inspection to certify the grade of corn. On January 10, 1976, when loading was substantially complete, USDA officials boarded the ship and began their own inspection. The USDA officials observed what they considered to be an excessive amount of broken corn and foreign material in the corn at rest in the holds of the ship.

DBOT was apprised of the observations of the USDA officials and started an inspection. On January 12, DBOT issued a certificate grading the corn as "U.S. No. 3 Yellow Corn" but the remarks section of that certificate included the statement "This grade does not necessarily represent the grade of the grain in the vessel." The use of this statement was authorized by the USDA.

Plaintiff unloaded approximately 25,000 bushels of the corn. DBOT conducted an official inspection of this corn and issued an official certificate grading the corn as "U.S. No. 3 Sample Grade Yellow Corn;" and in the remarks section of this certificate included the statement "Distinctly Low Quality—Excessive amount of stones found in barge. Some stones not visible."

On January 16 an appeal inspection was conducted by USDA on the 25,000 bushels and the agency issued an Official Appeal Inspection Certificate which graded the corn as "U.S. Sample Grade Yellow Corn." In the remarks section the certificate stated the grain to be "Distinctly Low Quality—Excessive large stones."

Plaintiff then loaded another 25,000 bushels to replace the amount that had been off loaded and after inspection this corn was graded as "U.S. No. 3 Yellow Corn." On January 18, 1976, the DBOT original grain certificates were surrendered to the DBOT and voided DBOT then issued "Corrected—Original Official Grain Inspection Certificate" for the corn loaded aboard ship. Included in the remarks section of this certificate were certain comments with respect to the condition of the corn. It is these certificates that Plaintiff seeks to have revised.

Plaintiff requested an appeal inspection of the corn aboard the RYSY II and an appeal inspection by the Board of Appeals and Review. Both of these appeal requests were dismissed.

Plaintiff then brought this action alleging that the inspection of the grain by USDA personnel was not in accordance with the Act and that but for the intervention of USDA personnel Plaintiff would have received "clear certificates" and therefore the remarks regarding the quality of the grain must be stricken from the certificates.

Plaintiff does not argue that the Secretary did not have the authority under the Grain Standards Act to conduct a supervisory inspection of the grain.[1] Rather Plain-

---

1. § 16 of the Act provides that: The Secretary is authorized to conduct such investigations, hold such hearings, require such reports from any official inspection agency or any person, and prescribe such rules and regulations as he deems necessary to effectuate the purposes or

tiff contends that the Act mandates inspections be carried out in accordance with procedures that the Secretary will establish and that where, as here, there were no procedures, any inspection carried out by USDA personnel could not be valid.

■ Defendant claims that reference to the second sentence of Section 16 and the regulations thereunder make clear that the section pertains to "official inspections," that is, inspections that are conducted by the licensed inspection agencies. The regulations referred to are set forth in 7 C.F.R. § 26.126 and are styled as "Supervision and Enforcement" procedures . . . They provide:

"(a) All sampling and testing, inspection certification, and related activities and functions performed under the Act by official inspection personnel or their agents shall be subject to supervision at all times by the Administrator and his duly authorized representatives. Whenever it is found that any official inspection personnel have performed any official function in an improper manner or have otherwise violated the Act, the regulations or the instructions issued to them by the Administrator, remedial action shall be promptly initiated in accordance with § 26.-89."

"(b) Tests made in determining whether inspection results, and other representations, designations, or descriptions are false, incorrect, or misleading, shall be performed in accordance with the instructions. In reviewing the results of the tests, statistical tolerances established and published by the Administrator for expected variations between inspections shall be applied."

The language of these regulations clearly shows that they relate to the official inspections conducted by an agency such as the DBOT not to any supervisory inspection conducted by the USDA. Further support for this view is present in § 26.89 of the regulations.[2] That section provides for administrative and criminal penalties against official inspection personnel who contravene the instructions of the Administrator.

■■ The impact of this is that in conducting any supervisory inspections USDA personnel are not bound to any particular set of tests. There is no requirement in the Act or in the regulations that would support Plaintiff's view that the exercise of supervision authority is conditioned upon application of particular procedures. The Court must conclude that the supervisory inspection here was valid. As the inspection by the USDA personnel was valid it

provisions of this chapter. Whether any certificate, other form, representation, designation, or other description is false, incorrect, or misleading within the meaning of this chapter shall be determined by tests made in accordance with such procedures as the Secretary may adopt to effectuate the objectives of this chapter, if the relevant facts are determinable by such tests. During the pendency of this action, the Grain Standards Act was amended. Public Law 94–582 October 21, 1976. The amendments to the Act do not mandate a different result in this case.

2. 7 C.F.R. § 26.89 in its entirety states:
§ 26.89 Corrective actions for violations by official inspection personnel.
(a) CRIMINAL PROSECUTION. Official inspection personnel who commit any offense prohibited by section 13 of the Act are subject to criminal prosecution in accordance with section 14 of the Act.

(b) ADMINISTRATIVE ACTION. In addition to the action described in paragraph (a) of this section, official inspection personnel are subject to administrative actions, in accordance with this paragraph, for any of the causes shown in section 9 of the Act: (1) Less serious cases may be disposed of by written cautionary notices or letters of warning; (2) in the more serious cases, administrative actions may be instituted for temporary suspension of a license pending final determination, suspension of a license for a prescribed period of time, or revocation of a license, as provided in the rules of practice in Subpart C or Subpart D of this part. Administrative actions for authorized Department employees may include, but are not limited to, changes in assigned duties or disciplinary action in accordance with law. [34 FR 1860, Feb. 8, 1969, as amended at 35 FR 9243 June 13, 1970; 39 FR 25050, July 8, 1974].

cannot be held that the remarks placed upon the certificates were invalid.[3]

For the above stated reasons the Court must deny Plaintiff's Motion for Summary Judgment and Grant the Defendants' Motion for Summary Judgment.

---

3. Defendant also claimed that it did not have the authority to issue new certificates with respect to the grain and that without the presence in this action of the DBOT it could not issue clear certificates. While the Court finds merit in both these arguments, it is not necessary to consider them.